Penniman *v.* Elliott.

---

## PENNIMAN *vs.* ELLIOTT and others.

In the case of composition deeds, the rule is clearly established, that the debtor must pay at the day appointed; and if he neglects to do so, the original debt is revived.

By the terms of a deed of compromise, the makers of promissory notes were discharged from further payments thereon by a composition deed, executed by the holders, upon the payment, by the makers, of a stipulated sum, in four, eight, twelve and sixteen months. The deed was on the condition that if default should be made *at the times so appointed*, the release should be null and void, and the creditors should be entitled to recover the full amount of their claim. The first payment fell due August 20, 1853. It was not paid until the 22d of that month, when it was paid to the attorney of P. who had then become het holder, and it was received by P. The second installment was due on the 22d of December, and was paid to the

Penniman *v.* Elliott.

attorney of P. on the 19th of that month, and was also received by P.
*Held* that although P. might have refused to receive the payments thus
made, and thereby have been restored to his original rights, yet that having
accepted the money, after the forfeiture, knowing that it was offered as a
payment on the compromise, this was to be deemed an intended waiver of
the forfeiture, and a ratification of the act of his attorney in receiving the
payment; and that he was concluded by it.

ACTION upon two promissory notes, made by the defend-
ant, dated April 17, 1849; one for $368 and the other
for $371.24, each payable to the order of H. N. Titus & Co.;
the one in four and the other in six months after date. The
plaintiff alleged in his complaint that he was now the holder
and owner of the notes, and that although they were due and
payable, yet the defendants had not paid the same, nor any
part thereof, " excepting only the sum of thirty-nine dollars
and twenty-five cents, which the said plaintiff admits that he
received to apply upon the said notes, on or about the 22d
day of August, 1853," and that the residue of said notes still
remained due and unpaid. The only defense attempted to be
established on the trial was, that the defendants had been dis-
charged from further payments on the notes by a composition
deed executed by the firm of H. N. Titus & Co., while the
notes were owned by them. The deed was dated April 20th,
1853, and it provided for the payment of the compromise in four,
eight, twelve and sixteen months, conditioned that if default
should be made *at the times so appointed,* the release agreed on
should be *null and void,* and the parties should be entitled
to recover the full amount of their respective claims. The
answer averred *due payment* according to the deed. The first
payment fell due August 20th, 1853. It was not paid until
the 22d of that month, and then it was received by the part-
ner of the plaintiff's attorney. The cause was tried at the
New York circuit in March, 1856, before Justice ROOSEVELT
and a jury. The court charged the jury that the compromise
made by Titus while he held the notes was an effectual bar
to this action brought by the plaintiff, if the terms of it were
complied with. The only question for them to decide was,

whether the terms of it had been complied with, and if not, whether compliance therewith had been waived by the plaintiff. The compromise deed was dated on the 20th of April, 1853. It was proved that the first payment was not made till the 22d of August, 1853. Was that payment accepted by the plaintiff? If so, the strict compliance with the condition was waived. That this case was like that of a bond and mortgage, with a condition that if the interest was not paid within thirty days after it fell due, the whole principal sum became due at the election of the mortgagee. That if, in such a case, the mortgagee accepted the interest after the lapse of thirty days, the forfeiture was waived. To this part of the charge the plaintiff's counsel excepted. That it did not appear in this case what the plaintiff did as· to taking the money. That he should have repudiated the payment as soon as it was made known to him, and that the money should have been handed back at once. That, from all that appeared, the plaintiff may have kept the money for a time, and may have deliberated upon it before directing it to be returned. If he did so, then he was bound, though the payment was made after the time. To this part of the charge the plaintiff's counsel also excepted.

The jury thereupon found a verdict for the defendants. The plaintiff made a case; leave being reserved to either party to turn the same into a bill of exceptions. A motion for a new trial was subsequently made at special term, and denied. The plaintiff then appealed to the general term.

*L. Birdseye,* for the appellant.

*H. H. Stuart,* for the defendants.

*By the Court,* INGRAHAM, J. This action was commenced in October, 1853, to recover the amount of two promissory notes. The answer admits the notes to be the defendant's, and sets up by way of defense a compromise with the plaintiff and other creditors, of the notes, for 25 per cent, to be paid in 4,

8, 12 and 16 months; that two payments have become due which were duly paid, and that the two remaining installments were not yet payable. The right of the plaintiff to recover, therefore, rests upon the question whether the defendant has paid the first two payments. These payments were due on the 20th of August and December, 1853. The payment of the first installment was made on the 22d of August, 1853. The second installment was paid on the 19th of December, 1853.

The compromise deed was made by H. N. Titus & Co., then being the holders of the note. Their subsequent transfer of it to Penniman did not relieve the notes from any defense that might be made to them in the hands of Titus & Co., because they were transferred after they became due to the plaintiffs. In examining this case on the testimony, I find nothing *in the evidence* showing that the plaintiff ever received the first or second payment. The first payment was made on the 22d of August, to Mr. Kirkland, conditionally; viz: subject to the approbation of Penniman. The testimony shows that when it was offered to him by Mr. Kirkland, he refused to receive it and refused to recognize the compromise; and the second payment was never offered to him. Even admitting that the stipulation in the deed might have been waived by the plaintiff on receipt of that installment after it was payable, still, in the absence of any proof to that effect, there is no ground for presuming such waiver from the deposit of the money with his counsel. The witness says, as soon as the plaintiff was informed of the payment he refused to receive it, and in September it was tendered to the defendant, who refused to take it back.

It appears to me that the plaintiff had the right to refuse such payment if not made on the day it was to have been made, after the composition; and when such refusal was made and communicated to the defendant, he could not by any subsequent deposit of the other payments, deprive the plaintiff of the benefit of such refusal. The plaintiff's attorney, under such circumstances, had no authority to waive a strict com-

Penniman *v.* Elliott.

pliance with the composition deed, and when the plaintiff refused expressly to receive the payment, and that refusal was known to the defendant, his act of depositing other payments with the plaintiff's counsel or attorney was a nullity. He then knew the plaintiff had refused to receive such payment, and the power of his attorney to receive any payment so as to waive the first default, if he ever possessed such power, was at an end. In *Leake* v. *Yancy,* (36 *Law and Eq. Rep.* 193,) Lord Campbell says, "upon default in the payment of the first instalment under the deed, the right of suing for the original debt would revive."

The only ground upon which the defendant can maintain his defense is by relying on the acts of the attorney as waiving the default in making the first payment. The attorney had no authority to make such a compromise in the first instance, without the consent of his client. (*Holker et al.* v. *Parker,* 7 *Cranch,* 432. *Mayer* v. *Faulkner,* 4 *Wash. C. C. R.* 511.) And such authority must either be shown, or may be inferred from the receipt of the money by the principal. If the attorney had no authority to make the compromise without the plaintiff's consent, he had no authority that would enable him to waive a forfeiture which his client had refused to waive.

If the case rested here, I should not hesitate to say that there was no evidence to warrant the defense which was the foundation of the verdict. There was no evidence on the trial showing any such waiver. In the complaint, however, there is an admission which is in direct opposition to the plaintiff's testimony, and which renders it necessary to inquire whether the plaintiff did waive such default in the payment of the first installment. The complaint admits that the plaintiff, on or about the 22d day of August, 1853, received $39.25 to apply upon the said notes, from the defendants. The testimony of Mr. Birdseye shows that about the first of September he went to the plaintiff and laid the matter before him and he refused to receive it, and that on the 30th September he so informed Askell, and offered to return him the money. With these

facts in evidence, the admission of the plaintiff in the complaint must be reconciled, and no other conclusion can be drawn from it, than that the plaintiff subsequently determined to ratify the act of his attorney by admitting the receipt of the money by himself, through his attorney, on the day on which the money was paid to the attorney.

The simple question then remains, whether the plaintiff, by thus receiving the installment, paid to· him through his attorney, waived the forfeiture arising from the non-payment on the 20th August. Numerous cases may be shown where the non-performance of a sealed instrument may be waived after the forfeiture, and the parties' rights sustained. The distinction exists between altering a contract under seal by parol, and waiving or releasing a right obtained by forfeiture, after the breach of the sealed contract. The latter may be by parol; the former cannot. (*See Delacroix* v. *Bulkley,* 13 *Wend.* 71, *and cases there cited.*) In the case of composition deeds the rule is clearly established, that a debtor must pay at the day appointed, and if he neglects so to do, the original debt is revived. (1 *E. D. Smith's Rep.* 68.) This only requires from the defendant performance on his part, to be discharged from a part of his original indebtedness. His neglect to pay only serves to restore to the plaintiff the right to collect his whole debt, while it exposes the debtor to no loss, beyond the payment of a debt which he still owes. There is no harshness, therefore, in holding the debtor to a strict rule, when he is required to comply with the terms of the contract which he has made, to discharge his indebtedness on payment of part. There is no doubt, therefore, but that the plaintiff might have refused to receive the first payment when made, on the 22d August, and thereby have been restored to his original rights. But he did not adopt this course, as it is admitted in the complaint, which for the purposes of this action must be taken as true, that he received the payment made on the 22d August. By such admission the plaintiff is, I think, concluded. The acts of the attorney

would not bind him as to the waiver. But his own act, admitting the receipt of the money, after it is apparent from the testimony that he understood it was offered as a payment on the compromise, can only be construed as an intended waiver of the delay, and a ratification of the act of the attorney in receiving the installment.

The alleged errors in the charge of the judge are not well founded. The first exception, to the comparison of this case to that of a mortgage with a condition, although not entirely free from objection, could do no harm to the plaintiff. There was no forfeiture, strictly, to be relieved, but there was a loss to be sustained by the defendant if the delay in paying the installment was not waived. The result was the same, and the cause producing the result arose from the same negligence. No injury could result from using the comparison. The second exception is alike unavailing, for the reason before stated. Although the evidence shows a direction to return the money to the defendant and a refusal to receive it, the admission of the complaint establishes beyond dispute not only that it had not been refused by the plaintiff but that he had actually received the money and passed it to the credit of the defendant. The plaintiff cannot complain that the judge left the question to the jury. The defendant might have complained that the judge did not tell the jury that the admission in the complaint was conclusive to show that the plaintiff actually received the money on the 22d August. It is apparent from the testimony that the plaintiff knew that the money was offered on an alleged settlement. The suggestion, therefore, that he applied it to the defendant's debt does not alter the rights of the parties.

The judgment should be affirmed.

[NEW YORK GENERAL TERM, May 3, 1858. *Davies, Clerke* and *Ingraham,* Justices.]